# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH MARTINEZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:17-03195-CV-RK |
| | ) | |
| TRIPLE S PROPERTIES, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER DENYING CLASS CERTIFICATION**

Before the Court is Plaintiffs' Motion for Class Certification. (Doc. 91.) The motion has been fully briefed, and the Court has heard oral argument. (Doc. 92; Doc. 99; Doc. 125; Doc. 149.) After careful consideration and for the reasons below, the motion is **DENIED**.

## Background

Plaintiffs allege that Defendant, an owner of residential rental properties, failed to give Plaintiffs certain disclosures after it took adverse action against them based on consumer reports in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681m(a) ("FCRA"). (Doc. 1-1 ¶¶ 54-61; Doc. 92 at 6.) Specifically, Plaintiffs claim that Defendant took adverse actions based on their consumer reports but never gave them the required "post-adverse-action" disclosures. Plaintiffs claim they were harmed without these notices because they lost the opportunity to respond. Defendant admits it did not have a practice of sending out adverse-action notices prior to receiving notice of this lawsuit. (Doc. 102 at 19.) Plaintiffs seek to certify the following class:

> All persons residing in Missouri who, within the five years preceding the filing of this petition who [sic],
>
> > (a) submitted a lease application to Defendant, and
> > (b) Defendant obtained a consumer credit report[,] and
> > (c) Defendant took adverse action as to their lease application based upon typthe contents of their consumer credit report[,] and
> > (d) who did not receive any FCRA adverse action notice from Defendant.
>
> Excluded from the above class definition are Defendants, any entity in which any Defendants has [sic] a controlling interest, any of the officers, directors, or employees of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, or their immediate family and Plaintiffs' counsel.

(Doc. 91 at 1.)

**Standing**

Standing is a threshold jurisdictional issue that the Court must address first even though the parties did not address it. *See Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019). Under *Spokeo, Inc. v. Robins*, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." 136 S. Ct. 1540, 1548 (2016) (quotation marks and citation omitted). In the FCRA context, a plaintiff must allege more than a "bare procedural violation, divorced from any concrete harm." *Id.* at 1549.

Here, the three named plaintiffs have demonstrated an Article III injury by submitting affidavits stating that they would have corrected errors in their consumer reports and reapplied for a lease if they had received proper FCRA notices.[1] (Doc. 107-1 ¶¶ 9-11; Doc. 107-2 ¶¶ 9-11; Doc. 107-3 ¶¶ 9-11.) Accordingly, the Court has jurisdiction to decide the present motion.

**Discussion**

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016). The Court "adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.'" *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citation omitted). Ascertainability is an "implicit" Rule 23 requirement that must be discussed independently. *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017).

Plaintiffs must also satisfy the four explicit prerequisites in Rule 23(a) and at least one of the three subsections of Rule 23(b). *Ebert*, 823 F.3d at 477. The four Rule 23(a) prerequisites are:

---

[1] The same is not necessarily true of other proposed class members. "[A] class cannot be certified if it contains members who lack standing." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). Plaintiffs claim all proposed class members had the same injury because they all lost the opportunity to respond to negative information in the reports. Whether this type of injury is enough for standing is the subject of a circuit split that emerged in *Spokeo*'s wake. The parties have not addressed this issue, however, and the Court need not tackle it *sua sponte* because a class will not be certified on other grounds. *See Schumacher*, 912 F.3d at 1106 ("express[ing] no view" on the split). *Compare Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694-99 (7th Cir. 2018) (lost opportunity to respond is enough for standing); *and Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 317-25 (3d Cir. 2018) (same), *with Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1169-76 (9th Cir. 2018) (lost opportunity to respond is not enough unless the report was inaccurate), *and Davis v. D-W Tool, Inc.*, No. 2:16-CV-4297-NKL, 2017 WL 1036132, at *4 (W.D. Mo. Mar. 17, 2017) (not enough unless the plaintiff alleges (1) that the report was inaccurate or (2) that with proper notice, the plaintiff could have convinced the defendant to change its mind about the adverse action).

"numerosity of plaintiffs, commonality of legal or factual questions, typicality of the named plaintiff's claims or defenses, and adequacy of representation by class counsel." *Id.* To obtain certification of a Rule 23(b)(2) class,[2] Plaintiffs must show that injunctive or declaratory relief is appropriate respecting the class as a whole. To obtain certification of a Rule 23(b)(3) class, Plaintiffs must show that common questions "predominate" over individual questions and that a class action is "superior" to other available methods of adjudication.

After careful consideration, the Court concludes that Plaintiffs have failed to carry their burden as to ascertainability, numerosity, injunctive relief, predominance, and superiority.

**I.   Ascertainability (Implicit Requirement)**

This requirement has not been met. "The class . . . must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling." *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *5 (W.D. Mo. Sept. 7, 2005). In the Eighth Circuit, a class is clearly ascertainable if its members can be identified by "objective criteria." *Sandusky*, 821 F.3d at 996-98; *see also McKeage*, 847 F.3d at 999.

Here, the proposed class is not clearly ascertainable. Membership in the class depends on whether Defendant took adverse action based on the contents of a consumer report, but Plaintiffs have identified only people who had an adverse action taken against them in general. Plaintiffs point to: (1) documents and deposition testimony showing that Defendant obtained and reviewed consumer reports for everyone who applied for a lease; (2) tenant files showing that some people were required to have cosigners or pay increased deposits; and (3) proposed self-identification claim forms that people who were denied leases could fill out.[3]  (Doc. 125 at 17-18.)

The Court is not persuaded that these documents constitute "objective criteria" for identifying class members. *Sandusky*, 821 F.3d at 996-98. Plaintiffs argue that "all of [Defendant's] decisions to take adverse actions" were based in whole or in part on consumer reports because Defendant reviewed consumer reports on all applicants and took adverse actions against over half of them. (Doc. 140-1 at 27-28.) According to Plaintiffs, this correlates with their

---

[2] Plaintiffs do not request to certify a Rule 23(b)(1) class.

[3] Defendant did not retain files for people who were denied leases. The Court has already addressed the argument that Defendant improperly destroyed these documents. After an evidentiary hearing on this issue, the Court found that Defendant acted in good faith in the regular course of business. (Doc. 88.)

3

approximation from a sampling of Defendant's files that 60% of the reports had "serious delinquenc[ies]." (*Id.*)

The Court disagrees. The fact that Defendant reviewed a consumer report or took an adverse action does not mean it took an adverse action based in whole or in part on a consumer report. Furthermore, even if the Court were to assume Plaintiffs' approximation is reliable and accurate, the existence of a correlation between the number of people who had adverse actions taken against them and the number of reports returned with a delinquency does not mean a delinquency was the basis for the adverse action. According to Defendant, it sometimes took adverse actions based on the lease applications themselves and public records "without ever considering the applicant's credit report." (Doc. 99 at 8; Doc. 99-3, ¶¶ 11-14.) For example, a lease application or public record might have disclosed that an applicant had no job and no other source of income; not enough income to cover the rent and other expenses; unacceptable pets; prior evictions or disputes with landlords; prior criminal activities; or inadequate references. (Doc. 99 at 8; Doc. 99-3, ¶¶ 11-14.) Defendant requested information directly from applicants in the lease application about employment, income, pets, prior evictions, prior felonies, and references. (Doc. 94-5 at 2-5.)

Plaintiffs also do not dispute Defendant's assertion that it never documented its reasons for taking adverse actions. (Doc. 99-3 ¶ 12.) The only apparent reason the *named* Plaintiffs have this information is that this dispute began as a disability discrimination case in the Missouri Commission on Human Rights. When Defendant was pressed for the reason it required Plaintiffs to obtain a cosigner and ultimately denied their lease, it claimed its decisions were based on consumer reports, not discrimination. Although this may tend to prove the named Plaintiffs' claims, no similar information has been submitted to identify other class members.

Finally, the Court is not convinced that Plaintiffs' proposed self-identification claim forms would constitute objective criteria for identifying class members. It is undisputed that Defendant did not have a practice of sending out adverse-action notices prior to receiving notice of this lawsuit, so other plaintiffs are unlikely to have any personal knowledge of why Defendant took an adverse action against them. Therefore, Plaintiffs have not shown ascertainability.

## II. Numerosity (Rule 23(a) Requirement)

Plaintiffs have not satisfied their burden as to numerosity for the same reasons discussed with respect to ascertainability. Under Rule 23(a)(1), the class must be "so numerous that joinder

4

of all members is impracticable." Relevant factors to determine numerosity include the number of people in the proposed class, the nature of the action, and the size of the individual claims. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982).

Plaintiffs argue that the proposed class contains at least 3,282 members because Defendant obtained consumer reports for 6,565 people during the relevant period and required a cosigner for at least half of them. (Doc. 92 at 8-9.) However, this is not a calculation of how many people had an adverse action taken against them based on a consumer report; rather, this is a calculation of how many people had an adverse action taken against them generally. As a result, Plaintiffs have not provided the Court with an estimation of the number of people in its proposed class. *See Liles v. Am. Corrective Counseling Servs., Inc.*, 231 F.R.D. 565, 573 (S.D. Iowa 2005) (numerosity not met due to speculation and lack of evidence about who was within the proposed class). Therefore, Plaintiffs have not shown numerosity.

### III. Rule 23(b) Requirements

Even if Plaintiffs had shown ascertainability and numerosity, they have not satisfied any of Rule 23(b)'s subsections.

#### A. Injunctive Relief (Rule 23(b)(2))

To certify an injunctive relief class, Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Plaintiffs must show "cohesiveness," meaning the relief sought "affect[s] the entire class at once." *Id.* at 362, 376; *Ebert*, 823 F.3d at 480.

Plaintiffs seek to certify an injunctive class to "permanently prohibit[] Defendant from violating the FCRA." (Doc. 92 at 14-15.) However, the Complaint does not seek injunctive relief; the deadline to amend the Complaint has passed; and Plaintiffs have not sought leave to amend or attempted to show good cause for relief from the Court's scheduling order. Even if the Court were to entertain Plaintiffs' request for such extraordinary relief, they have not shown how a court order prohibiting Defendant from violating the FCRA in the future would provide any relief to the proposed class members for past violations of the FCRA's notice requirements. Accordingly, Plaintiffs have not met the Rule 23(b)(2) requirements to certify an injunctive class.

5

## B. Predominance and Superiority (Rule 23(b)(3))

### 1. Predominance

Predominance requires showing "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt*, 615 F.3d at 1029. "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Id.* (quotation marks and citation omitted). "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (quotation marks and citation omitted). Predominance fails if individual questions "overwhelm the questions common to the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

Here, the Court finds that individual questions overwhelm the common questions. Plaintiffs contend that liability can be determined using the following common evidence: lease application documents; the consumer reports Defendant obtained; testimony of Defendant's agents; and lease files for tenants who obtained leases but were required to have cosigners, pay increased deposits, or endure some other adverse action. (Doc. 92 at 14.) Plaintiffs claim that their theory of "willfulness" relies on Defendant's policies and practices rather than individual animus and that the amount of damages is likely to be uniform because they have elected to pursue statutory damages instead of actual damages. They suggest an individual evaluation of damages is unnecessary because the only relevant inquiry is defendant's conduct, which was the same as to all class members.

Although willfulness may be a common question, individual evaluations of damages would still be required to assess statutory damages. Section 1681n(a)(1)(A) of the FCRA does not set a fixed statutory penalty amount. It allows statutory damages in any amount between $100 and $1000. Plaintiffs argue "[i]t is more likely that the statutory damages imposed would be uniform," but they do not say why they believe all proposed class members would have been harmed to the same degree. (Doc. 147 at 10 n.1.) This is insufficient to carry their burden. *See Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012) ("[S]tatutory damages . . . typically require an individualized inquiry.").

Even if the Court were to assume the amount of damages is a common question, the individual proof required to show the basis for Defendant's adverse action for every class member would defeat predominance. The evidence would vary from class member to class member about whether a leasing decision was based in whole or in part on a consumer report or entirely on some other source, such as a lease application or public record. This issue is central to every proposed class member's right to recover. Therefore, Plaintiffs have not shown predominance.[4]

2. **Superiority**

Under Rule 23(b)(3), Plaintiffs must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) lists four factors for the superiority analysis, but only one appears to be pertinent to this case: whether or not there will likely be "difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). As discussed above, individualized inquiries would be necessary in pursuing this case as a class action and would thereby create difficulties as such.

Plaintiffs argue that a class action is superior because the value of each individual claim is relatively small, and litigation of a single claim would not be worth the cost and effort. Defendant argues this concern alone is insufficient to establish superiority, especially here because attorneys' fees are recoverable for individual claims under the FCRA. The Court believes neither of these factors are dispositive and finds that maintaining this case as a class action would be unmanageable in light of the need for individualized inquiries. Plaintiffs have not carried their burden on the other Rule 23 requirements and, as a result, have not shown superiority.

**Conclusion**

Accordingly, Plaintiffs' Motion for Class Certification is **DENIED**. (Doc. 91.)

**IT IS SO ORDERED.**

                                                    s/ Roseann A. Ketchmark
                                                    ROSEANN A. KETCHMARK, JUDGE
DATED: April 16, 2019                UNITED STATES DISTRICT COURT

---

[4] Individualized inquiries would also be required for Defendant's statute of limitations defense, as the proposed class is currently defined. If any proposed class members discovered the alleged violations more than two years before this case was filed, their claims are time barred. 15 U.S.C. § 1681p. To avoid individual inquiries on this issue, Plaintiffs have offered to resize the class period to two years instead of five. However, the Court finds that the statute of limitations issue is not critical to the predominance analysis and that individual questions would still predominate regardless of the statute of limitations issue.