# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| ELIZABETH MARTINEZ, et al., | ) |
|                Plaintiffs, | ) |
| v. | ) Case No. 6:17-03195-CV-RK |
| TRIPLE S PROPERTIES, | ) |
|                Defendant. | ) |

## ORDER

Plaintiffs Elizabeth Martinez, Elizabeth Bolden, and Jesus Rios, Jr. have brought this suit against Defendant Triple S Properties alleging that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"). (Doc. 1-1.) Before the Court are cross motions for summary judgment. (Docs. 93, 95.) Defendant seeks a finding that it is entitled to partial summary judgment on Plaintiffs' claim for actual damages. Plaintiffs seek summary judgment against Defendant on liability. The motions are fully briefed and ready for disposition. (Docs. 93, 94, 95, 96, 97, 105, 106, 107, 119, and 131.) After careful consideration, the motions are **DENIED**. However, pursuant to Fed. R. Civ. P. 56(g), the Court will treat as established in this case that: (1) Plaintiffs' sole claim against Defendant is for statutory damages under 15 U.S.C. § 1681n; and (2) Defendant failed to comply with the adverse action notice requirement of 15 U.S.C. § 1681m(a) as to Plaintiffs.

## Background

The following facts are uncontroverted. Defendant is a Missouri corporation that leases rental homes. On or about February 19, 2017, Plaintiffs submitted an application to lease a home owned by Defendant located in Republic, Missouri. As part of the lease application process, Defendant requested, and Plaintiffs authorized, a credit report to be run by Equifax for Plaintiffs. Based on the contents of Plaintiffs' credit report obtained from Equifax, Defendant took adverse action in response to Plaintiffs' lease application. Specifically, Defendant required Plaintiffs (1) to obtain a co-signer on their lease application and (2) ultimately denied Plaintiffs' lease application. Defendant denied Plaintiffs' application based on their credit history, which indicated that Plaintiffs owed money to their former landlord. After taking adverse action, Defendant did not provide Plaintiffs with any notice that, based on the contents of Plaintiffs' credit reports, it was

(1) requiring Plaintiffs to obtain a co-signer and (2) denying their application. Defendant additionally failed to provide Plaintiffs with notice providing the following information:

   a. the name, address and phone number of Equifax, the credit-reporting agency that supplied the request;
   b. a statement that Equifax didn't make the adverse decision and [Equifax] can't explain why the decision was made;
   c. notice of the Plaintiffs' right to a free copy of their report from Equifax if they ask for it within 60 days;
   d. notice of Plaintiffs' right to dispute the accuracy or completeness of any information provided by Equifax; and
   e. the [Plaintiffs'] credit score, if a score was used.

(Doc. 96 at 2, ¶ 4.) Plaintiffs' petition makes a claim for actual damages. However, Plaintiffs have elected to pursue only statutory damages in the amount of $1,000 per violation for each Plaintiff.

## Legal Standard

"Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Id.* (citation and quotation marks omitted). "If the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## Discussion

### I. Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Actual Damages

Defendant argues that it is entitled to partial summary judgment as to Plaintiffs' claim for actual damages because Plaintiffs have not produced evidence that they suffered any actual harm as a result of the alleged FCRA violation. Defendant further argues that, without any actual harm, Plaintiffs' bare allegation of a procedural violation of the FRCA does not satisfy the injury-in-fact requirement of standing under Article III.

The FCRA, among other things, requires certain procedures to be followed to assure maximum possible accuracy of consumer reports. 15 U.S.C. § 1681e(b). Relevant here, the FCRA

requires users of consumer reports to provide an individual with notice in the event of adverse action that is based "in whole or in part on any information contained in" the individual's consumer report. 15 U.S.C. § 1681m(a). For a negligence violation of the FCRA, the FCRA only permits actual damages. 15 U.S.C. § 1681o. For a willful violation of the FCRA, the FCRA permits actual damages or statutory damages "of not less than $100 and not more than $1,000[.]" 15 U.S.C. § 1681n(a)(1)(A).

Here, while Plaintiffs sought actual damages in their Petition, (Doc 94-1), Plaintiffs have since elected to only pursue statutory damages under § 1681n, rather than actual damages. (Doc. 106 at 2; Doc. 94-9 at C.1.) Plaintiffs have, however, submitted affidavits to demonstrate that they have suffered an injury. Plaintiffs each state that the credit report obtained for him or her by Defendant included inaccurate entries regarding past due accounts. (Doc. 107-1 ¶ 9; Doc. 107-2 ¶ 9; Doc. 107-3 ¶ 9.) Plaintiffs state that they would have corrected errors in their consumer reports and reapplied for a lease if they had received proper FRCA adverse action notices. (Doc. 107-1 ¶ 9-11; Doc. 107-2 ¶ 9-11; Doc. 107-3 ¶¶ 9-11.) The Court has previously found in its Order denying class certification that the statements in these affidavits demonstrate that Plaintiffs have suffered an Article III injury. (Doc. 150.)

Defendant argues that Plaintiffs' affidavits conflict with Plaintiffs' prior sworn deposition testimony and should therefore be stricken. "A party should not be allowed to create issues of credibility by contradicting his own earlier testimony." *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. *Id.* at 1365. "District courts, however, must use extreme care in examining such issues[.]" *City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006). "Accordingly, when the affiant states in his affidavit that he was confused in his deposition or where the affiant needs to explain portions of his deposition testimony that were unclear, the district court should not strike the affidavit from the record." *Id.* To be properly disregarded, statements in an affidavit must directly contradict prior sworn testimony such that it could be considered a sham. *See Baker v. Silver Oak Senior Living Mgmt. Co., L.C.*, 581 F.3d 684, 690 (8th Cir. 2009).

### A. Plaintiff Jesus Rios Jr.'s affidavit

Starting with Plaintiff Jesus Rios, Jr. ("Rios"), the Court discusses the deposition testimony and the affidavits for each Plaintiff in turn. Defendant argues that two statements made by Rios in his affidavit conflict with Rios' former deposition testimony and should be stricken. The statements are (1) regarding Rios' knowledge of the accuracy of his credit report and (2) regarding Rios' knowledge of owing any money to TLC Properties. Additional context is important when examining Rios' statements in his deposition and subsequent affidavit. Below is the single entry on Rios' credit report showing a past due account which is discussed in Rios' deposition and affidavit:

| CREDITOR | OPENING DATE MONTHS REVIEWED | REPORTED DATE DLA | HIGH CREDIT | BALANCE | PAST DUE AMOUNT | HISTORICAL TIMES PAST DUE 30 | 60 | 90+ | TYPE TERMS | PRESENT STATUS | ECOA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HUNTER WARFIELD | 01/01/16 7 | 01/01/17 | $3626 | $3943 | $3943 | -- | -- | -- | COLL 001 $0 | COLLECTION XP | B |

**Remarks:** ORIGINAL CREDITOR: CORYELL COURTS

(Doc. 148 at 1175.) Notably, the creditor is listed as "Hunter Warfield," but in small print, the "Remarks" just below the entry lists the original creditor as "Coryell Courts." There are two different amounts listed: $3626 (high credit) and $3943 (balance/past due amount). The account's present status is noted as in "collection." Additionally, Plaintiffs' lease application indicates that Plaintiffs previously lived at an address at "Coryell Courts" (from October 2014 to October 2015) with the landlord "TLC properties." (Doc. 94-5 at 8-9.)

#### 1. Rios' knowledge of the accuracy of his credit report

In his May 2018 deposition, Rios was questioned as follows:

> [Defendant's counsel]: Do you know if you have any judgments against you with Coryell Courts, TLC, or Hunter Warfield?
> [Rios]: No.
> [Defendant's counsel]: You don't know or - -
> [Rios]: I don't know.
> [Defendant's counsel]: Has anyone from any of those entities attempted to collect money from you?
> [Rios]: No.
> . . .

4

[Defendant's counsel shows Rios his credit report]

[Defendant's counsel]: Okay. And the second page, we're looking about midway down. See where it says Hunter Warfield?
[Rios]: Yes
[Defendant's counsel]: And it has the opening being 1-1 of '16, reported 1-1 of '17, balance of 3,626?
[Rios]: Yes.
[Defendant's counsel]: And it says it's in collection. Do you know what that was for?
[Rios]: No.
[Defendant's counsel]: Do you believe that's an accurate report on your credit report?
[Rios]: I have no idea.
. . .
[Defendant's counsel]: Do you know if that's related to TLC Properties?
[Rios]: I have no idea.
. . . .

(Doc. 94-7 at p. 8, ln. 13-20; p. 11, ln. 21 – p. 12, ln. 16.)

Based on the questioning, it is clear that Rios was shown the same entry on his credit report that is depicted above although it appears that the amount of $3626 was mistakenly referred to as the "balance" when that amount is listed as the "high credit." To summarize Rios' responses, he disclaims any knowledge of (1) collection efforts against him by Hunter Warfield, TLC Properties, or Coryell Courts; (2) whether the entry of Rios credit report showing a past due account is accurate; and (3) any relation of that entry to TLC Properties. Six months later and after the close of discovery, in November 2018, Rios made statements in an affidavit. In Rios' affidavit, Rios states the credit report Defendant obtained for him included one inaccurate entry: that he owes money to Coryell Courts in the amount of $3,943. (Doc. 107-3 at 2, ¶ 9.)

Accordingly, Rios initially disclaimed any knowledge of whether the past due account listed on the credit report was accurate, but six months later and a month after the close of discovery, Rios conclusively stated that this entry on the credit report was inaccurate. When questioned about the past due account during Rios' deposition, Rios is specifically directed to take notice of the creditor "Harold Warfield" as well as an amount that was not the actual past due or balance amount. From the deposition excerpt provided, Rios was not directed to the small print listing the original creditor as "Coryell Courts." Even still, it is implausible that directing Rios to these additional items on the past due account entry would have impacted his testimony given that

5

Rios also disclaimed any knowledge of collection efforts against him by Harold Warfield, Coryell Courts, or TLC Properties and any relation of the entry to TLC Properties (the Coryell Courts landlord). Moreover, Rios never states in his affidavit that he was confused in his deposition or that he needed to explain portions of his deposition. Therefore, these statements are in direct conflict and the later statement in Rios affidavit will be disregarded.

### 2. Rios' knowledge of whether he owed money to TLC Properties

In his May 2018 deposition, Rios was questioned as follows:

[Defendant's counsel]: Do you know if you owed TLC money when you left their property?
[Rios]: I think we paid up 'til the time we were there, but I don't know.

. . .

(Doc. 94-7 at p. 8, ln. 21-24.)

In short, Rios states in his deposition that he is uncertain whether he owed money to TLC Properties at the time he left their property (which was in October 2015). Later, in his November 2018 affidavit, Rios stated he does not owe money to any former landlords currently, or at the time of his application with Defendant. (*Id.* at ¶ 10.) At first, these statements appear to be contradictory because Rios initially stated he was uncertain about whether he owed money to TLC Properties, but later conclusively stated in his affidavit that he did not owe money to any former landlord (which would include TLC Properties). However, Rios statements involve different timeframes. Specifically, during Rios' deposition, he stated that he did not know whether he owed money to TLC Properties at the time he left their property, which would have been October 2015. And in Rios' affidavit, he stated that he did not owe money to TLC Properties currently (November 2018), or at the time he applied for a lease with Defendant (February 2017). Rios could have been uncertain whether he owed TLC Properties money as of October 2015, but be certain he didn't owe TLC Properties money as of November 2017 going forward. Given that different timeframes are involved, there is no direct conflict, and the Court will not weigh the evidence or make a credibility determination at summary judgment.

Although Rios' statement in his affidavit regarding his knowledge of the accuracy of his credit report will be disregarded, Rios' statement in his affidavit that he did not owe money to any former landlord (which would include TLC Properties) is sufficient to establish that Rios has standing. It is undisputed that Defendant denied Plaintiffs' lease application based on the credit history in their credit reports, which indicated that Plaintiffs owed money to their former landlord

6

TLC Properties. (Doc. 107 at 3-4, ¶ 5, 7; Doc. 131 at 4-5, ¶¶ 5, 7.) Rios has shown by his affidavit that he did not owe TLC Properties money at the time Plaintiffs applied for the lease with Defendant.

B.     **Plaintiff Elizabeth Martinez's affidavit**

In Plaintiff Elizabeth Martinez ("Martinez")'s deposition, Martinez testified that she was not sure about whether she owed money on the lease with TLC at the time she left (which was in October 2015). (Doc. 94-8 at 5, ln. 25 – 6, ln. 6.) In Martinez's affidavit, Martinez states there are two inaccuracies in the credit report obtained for her by Defendant. (Doc. 107-1 at ¶ 9.) Martinez states that two entries in the credit report indicating she had past due amounts totaling $333 were inaccurate, and that she did not owe any money on these accounts. (*Id.*) Upon review of the credit report, it is not apparent to the Court that these statements are in direct conflict, and Defendant does not provide an explanation.

C.     **Plaintiff Elizabeth Bolden's affidavit**

Regarding Plaintiff Elizabeth Bolden's deposition testimony, Defendant maintains that Bolden testified "that the collections on her credit report were accurate." (Doc. 131 at 9.) However, Bolden did not give this testimony. Bolden was questioned about certain collection efforts against her at the time she completed the application with Defendant. (Doc. 94-6 at 3, ln. 13 – 4, ln. 24.) Bolden testified that Credit One, a hospital, and Sprint had all attempted to collect money from her. (*Id.*) In Bolden's affidavit, Bolden states there are three entries in the credit report obtained for her by Defendant indicating that she has past due amounts. (Doc. 107-2 at ¶ 9.) Bolden further states "[t]here are two separate entries in the amount of $1072 [which are] inaccurate duplications of the same debt." (*Id.*) It is not apparent to the Court that these statements are in direct conflict, and Defendant does not provide an explanation.[1]

D.     **Summary**

In summary, the Court disregards Rios' statement in his affidavit regarding the accuracy of his credit report. However, based on Rios' statement in his affidavit that he did not owe money to any former landlord (which would include TLC Properties) at the time he applied for a lease

---

[1] Defendant also references testimony in Bolden's deposition that she "entered into another year lease with TLC but did not honor the lease and opined that there was likely a penalty for breaching the lease which was never paid." (Doc. 131 at 12.) However, the deposition excerpt referenced was not submitted in conjunction with the Defendant's motion for partial summary judgment.

7

with Defendant, Rios' affidavit establishes that he has standing even when this statement is disregarded. Even if Rios' affidavit does not give him standing, because Martinez's and Bolden's affidavits establish that they have standing, the case can proceed. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (where there are multiple plaintiffs, at least one plaintiff must have standing); *North Dakota v. Heydinger*, 825 F.3d 912, 917 (8th Cir. 2016) (Plaintiffs meet the Article III standing requirement if at least one plaintiff has standing to sue).[2] Therefore, the Court need not revisit its earlier ruling. (Doc. 150.)

Although the Court does not grant Defendant's motion for partial summary judgment, it will treat as established in the case going forward that Plaintiffs' sole claim against Defendant is for statutory damages under 15 U.S.C. § 1681n. *See* Fed. R. Civ. P. 56(g).

## II. Plaintiffs' Motion for Summary Judgment on Defendant's Liability[3]

Plaintiffs contend that they are entitled to summary judgment because Defendant concedes it did not comply with the adverse action notice requirement of the FCRA.

Plaintiffs' sole claim against Defendant is for statutory damages under § 1681n. To succeed in establishing Defendant's liability for Plaintiffs' claim, Plaintiffs must prove that Defendant's failure to comply with the FCRA adverse action notice requirement was willful. *See* 15 U.S.C. § 1681n(a) ("[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any [individual] is liable to that [individual.]"). Plaintiffs are therefore not entitled to summary judgment on Defendant's liability unless they prove Defendant's violation of the FCRA's notice requirements was willful. However, Plaintiffs' brief in support of their motion for summary judgment is silent on the issue of Defendant's willfulness. Therefore,

---

[2] The Court notes that the standing inquiry in a case involving multiple plaintiffs is different than the standing inquiry in the context of a class action. *Compare Heydinger*, 825 F.3d at 917 (Plaintiffs meet the Article III standing requirement if at least one plaintiff has standing to sue), *with Avritt v. Reliastar Life Ins. Co.*, 6115 F.3d 1023, 1034 (8th Cir. 2010) (a class cannot be certified if it contains members who lack standing).

[3] The issue raised by Defendant's opposition to Plaintiffs' motion—whether the Court should wait to rule Plaintiffs' motion for partial summary judgment until after it rules Plaintiffs' motion for class certification—is moot. The Court previously denied Plaintiffs' motion for class certification. (Doc. 150.) Defendant also argues that Plaintiffs are not entitled to summary judgment on a claim under § 1681o (negligent noncompliance provision) because they have not asserted any actual damages. However, Plaintiffs have conceded that their sole claim against Defendant is for statutory damages under § 1681n (willful noncompliance provision).

Plaintiffs have not met their burden to show that there is no genuine issue as to any material fact regarding Defendant's liability.

In Plaintiffs' reply brief, Plaintiffs maintain that they are entitled to partial summary judgment and request the Court to find that Defendant violated the adverse action notice requirement under § 1681m(a) as to Plaintiffs. (Doc. 119 at 1.) Defendant has conceded that it violated the adverse action notice requirement under § 1681m(a) as to Plaintiffs. (Doc. 96 ¶¶ 1-4; Doc. 105 ¶¶ 1-4); *see* 15 U.S.C. § 1681m(a) (adverse action notice requirements). Defendant maintains, however, that Plaintiffs are not entitled to summary judgment because the issue of willfulness under § 1681n remains for trial. The Court agrees.

Although the Court does not grant Plaintiffs' motion for summary judgment, it will treat as established in the case going forward that Defendant failed to comply with the adverse action notice requirement of § 1681m(a) as to Plaintiffs. *See* Fed. R. Civ. P. 56(g). The issue of whether Defendant's violation of the FCRA adverse action notice requirement was willful under § 1681n, and Defendant is thereby liable to Plaintiffs, remains for trial.

## Conclusion

Accordingly,

1. Defendant's motion for partial summary judgment is **DENIED** (Doc. 93);
2. Plaintiffs' motion for summary judgment is **DENIED** (Doc. 95);
3. Pursuant to Fed. R. Civ. P. 56(g), the Court will treat as established in this case that:
   a. Plaintiffs' sole claim against Defendant is for statutory damages under 15 U.S.C. § 1681n; and
   b. Defendant failed to comply with the adverse action notice requirement of 15 U.S.C. § 1681m(a) as to Plaintiffs.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 18, 2019